DET 015320

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

**MICHELLE HELENE DUDZINSKI,**

      Plaintiff,

vs.

**SPIRIT AIRLINES, INC., ASSOCIATION
OF FLIGHT ATTENDANTS/COMMUNICATIONS
WORKERS ASSOCIATION, ROBERT LOVE,
AMY JACOBS and NICOLE TRUPIANO
jointly and severally,**

      Defendants.

_____/

MICHELLE H. DUDZINSKI
In Pro Per
7311 Yager Street
Saint Clair, MI 48
(586) 303-5588

_____/

Case: 2:09-cv-15009
Assigned To : Lawson, David M.
Referral Judge: Whalen, R. Steven
Assign. Date : 12/24/2009
Description: cmp dudzinski v. spirit airlines, et al (tm)

## COMPLAINT

NOW COMES the Plaintiff, MICHELLE H. DUDZINSKI, Pro Se, and for her Complaint

states unto this Honorable Court as follows:

## JURISDICTION

1. That Plaintiff is a resident of the City of Saint Clair, County of Saint Clair, State of

Michigan.

4. That Defendant Spirit Airlines does business in the State of Michigan.

3. That the facts and circumstances that give rise to this cause of action occurred in the

State of Michigan.

4. That the amount in controversy is a sum greatly exceeding One Million

($1,000,000.00)  Dollars.

5.  That this controversy involves several federal statutes and federal law.

6.  That a portion of this controversy and action is brought under Title 29, Part 825 of the Code of Federal Regulations, this being more commonly known as The Family and Medical Leave Act of 1993.

7.  That this action involves a federal question and the United States government is not a party to this action.

8.  That jurisdiction in this Honorable Court is proper.

## FACTUAL SCENARIO

9.  That Plaintiff incorporates and re-alleges each and every paragraph listed above as if more specifically and fully laid out herein by reference thereto.

10.  That Plaintiff applied with Defendant airline for a position as a flight attendant in the Summer of 1998.

11.  That Plaintiff trained as a flight attendant with Defendant airline for a period of at least five (5) weeks.

12.  That Plaintiff successfully completed training as a flight attendant with Defendant airline.

13.  That Plaintiff was officially hired and became an employee of Defendant airline in October of 1998.

14.  That Plaintiff remained an employee of Defendant airline continuously from October of 1998 until she was terminated by Defendant airline on or about December 27, 2007.

15.  That during the last year of her employment with Defendant airline Plaintiff began

2

suffering harassment from several Defendant airline employees, to wit; Defendant Nicole Trupiano, Defendant Robert Love, and Defendant Amy Jacobs.

16.   That said harassment started in earnest after Plaintiff went out one night with several employees of Defendant airline, including, but not limited to; Defendant Nicole Trupiano, Angelique Paluzzi a/k/a Angelique Paciero and several others.

17.   That during this night out the individuals were all transported by limousine to a Detroit Lions football game.

18.   That after the football game the individuals were again transported by limousine to an area restaurant.

19.   That after the individuals left the restaurant they were again transported by limousine to topless bar.

20.   That Plaintiff could not understand why they went to the topless bar as she did not want to go but agreed to go as she was just a passenger and there were only two (2) men in this group of approximately eight (8) persons.

21.   That while at the topless bar Plaintiff observed several of her female co-workers, including, but not limited to, Defendants Nicole Trupiano and Angelique Paluzzi tipping topless dancers.

22.   That Plaintiff sat at a table by herself during this time as she was embarrassed by the whole episode.

23.   That while sitting by herself Plaintiff ordered a beer and gave the waitress her credit card to pay for same.

24.   That the waitress returned a short time later with a bill for the drinks of everyone in

3

the party and the waitress wanted Plaintiff to pay for all the drinks of the whole party and Plaintiff refused to do so.

25.  That Plaintiff stated that she would only pay for her own drink and the waitress then stated that she wanted Plaintiff to talk to the manager and the waitress began to walk towards the manager.

26.  That on the way to talk to the manager Plaintiff contacted Defendant Nicole TRUPIANO and tried to tell her what was happening and Defendant Nicole Trupiano yelled "shut up Michelle, leave me alone".

27.  That the waitress then took Plaintiff over to the manager of the bar and he insisted that she sign the receipt for the drinks of all the party and Plaintiff still refused so the manager said that she could not remain in the bar if she would not sign and removed Plaintiff from the bar and kept her credit card.

28.  That Plaintiff eventually signed the receipt in order to get her credit card back.

29.  That the next day Plaintiff contested the bill and the credit card company credited her accordingly.

30.  That after the credit card incident Plaintiff waited outside by herself for approximately an hour and a half for the limousine to return at which time all the persons who were in the group left the bar.

31.  That Plaintiff spent the night at the home of Defendant Nicole Trupiano and in the morning overheard Defendant Nicole Trupiano and some of the other females present at the home of Defendant Nicole Trupiano discussing how some of the girls in the group had been kissing each other the previous evening.

4

32.  That when Plaintiff confronted Defendant Nicole Trupiano and the other females who had spent the night at Defendant Nicole Trupiano's home about the behavior of the previous evening Defendant Nicole Trupiano threatened Plaintiff by stating something to the effect of "you better not tell anyone about what happened".

33.  That during another phone conversation with Defendant Nicole Trupiano Plaintiff was again threatened "not to tell anyone" about what had taken place during the above mentioned night out.

34.  That during a period of temporary lay off Plaintiff, Defendant Nicole Trupiano and Defendant Nicole Trupiano's sister all worked part time for a vending company.

35.  That Defendant Nicole Trupiano's sister was fired from the vending company for theft.

36.  That Defendant Nicole Trupiano blamed Plaintiff for the firing of Defendant Nicole Trupiano's sister and it was directly after the firing of Defendant Nicole Trupiano's sister that Plaintiff began to get written up and disciplined for things that would not normally be written up or disciplined.

37.  That during this time period Plaintiff was written up a number of times for absences that were properly and duly covered under FMLA.

38.  That for all of the absences that Plaintiff was written up for she had FMLA approval and the corresponding approval numbers and as such said absences by law were not to be used against her in any form of discipline by Defendant airline.

39.  That FMLA covered absences taken by Plaintiff were used as a negative factor by Defendant airline in disciplining Plaintiff which was unlawful under FMLA.

40. That also during this time period Plaintiff was suffering severe emotional stress and trauma due to several personal issues including, but not limited to:

    a. Plaintiff's teenaged daughter had threatened to kill herself and ended up in a psychiatric hospital;

    b. Plaintiff's step-mother who raised Plaintiff was on her way home from a funeral and ran a stop sign killing one (1) and critically injuring three (3) including herself and was charged with negligent homicide even though there was no alcohol involved and her step-mother had never before received even a traffic ticket; and

    c. Plaintiff's biological mother was hospitalized and diagnosed with advanced colon cancer.

41. That members of Defendant union including union management and Defendant airline were made aware of the personal issues that Plaintiff was going through.

42. That during this time period Plaintiff was disciplined using a "Step" disciplinary process for things that commonly occurred with other employees of Defendant airline who were not disciplined showing a pattern of discrimination and harassment.

43. That on or about March 6, 2007, Plaintiff received a First Step write up for a security breach violation for using a security badge that had expired on her birthday.

44. That Plaintiff was written up for this violation even though it was unintentional.

45. That numerous other employees of Defendant airline had committed this same offense, often times intentionally, and yet were never disciplined by Defendant airline.

46. That Plaintiff, pursuant to the Collective Bargaining Agreement (hereinafter referred to as "CBA"), filed a grievance in the proper manner contesting the write up of March 6, 2007, and Defendant airline

47. That the Defendant airline did not follow the terms and conditions of the CBA in

6

responding to the grievance thereby breaching the contract.

48.  That several other disciplinary writeups were served upon Plaintiff for extremely small and inconsequential alleged breaches of Plaintiff's obligation to the Defendant airline such as being late three (3) minutes.

49.  That Plaintiff filed grievances in regards to each and every write up in the manner prescribed in the CBA and Defendant airline failed to follow proper protocol and procedure as laid out in the CBA thereby breaching the contract.

50.  That Plaintiff's termination from Defendant airline was retaliatory in nature.

51.  That Defendant airline illegally used FMLA approved sick time off as a negative factor in Plaintiff's discipline.

52.  That the Defendant union breached its duty to Plaintiff by failing to provide responsible and reasonable representation of Plaintiff.

53.  That both Defendant airline and Defendant union breached the terms and conditions of the CBA in that both knew of issues that Plaintiff was facing and that were interfering with her job performance and yet failed to insure that an intervention took place to give Plaintiff the opportunity to avail herself of the Employee Assistance Program (hereinafter referred to as "EAP") and the protections offered to Plaintiff thereunder.

WHEREFORE Plaintiff prays that this Honorable Court award her monetary damages greatly in excess of $1,000,000.00, costs, interests, attorney fees, punitive damages and any and all further relief that Plaintiff is entitled to at law and that this Honorable Court feels is just, prudent, fair and equitable in the circumstances.

## **BREACH OF CONTRACT**

54. Plaintiff incorporates and re-alleges each and every paragraph listed above as if more specifically and fully laid out herein by reference thereto.

55. That Plaintiff was hired as a flight attendant by Defendant airline on or about October 19, 1998.

56. That Plaintiff remained a full time employees of Defendant airline from October 19, 1998, until December 27, 2007, when her employment with Defendant airline was terminated by Defendant airline.

57. That on or about February 7, 2003, Plaintiff joined Defendant Association of Flight Attendants/Communication Workers Association (hereinafter referred to as "AFA-CWA") union.

58. That Defendant airline and Defendant Association of Flight Attendants/Communication Workers Association union entered into a Collective Bargaining Agreement (herein after referred to as "CBA").

59. That said CBA constituted a contract between Defendant airline and Defendant Association of Flight Attendants/Communication Workers Association union and its union members which included the Plaintiff.

60. That good and valuable consideration was tendered by all parties to the contract.

61. That said CBA gave certain rights and responsibilities to each of the parties to the contract and to each of the members of the union.

62. That the agreement between Spirit Airlines and the Association of Flight Attendants under Section 22 of said agreement give certain rights and obligations to the union members

8

including the Plaintiff.

63.  That under Section 22 of the CBA, that being Grievance Procedure and System Board, there is a paragraph C - Discipline and Discharge - which lays out the responsibilities, duties and obligations of Defendant Spirt Airline to Plaintiff in regards to discipline and discharge - Defendant airline had certain obligations to Plaintiff in regards to discipline.

64.  That specifically, under Section 22 of the CBA, paragraph C, sub paragraph 1a, Defendant airline had a contractual duty to Plaintiff to conduct a "... thorough, impartial and expeditious investigation of the alleged charge." ...

65.  That Defendant airline materially breached the contract in this regards as to each of the disciplines imposed on Plaintiff leading up to and including termination of Plaintiff's employment with Defendant airline.

66.  That under Section 22 of the CBA, paragraph C, sub paragraph 1b, Defendant airline had a contractual duty to Plaintiff to hold an investigative meeting.

67.  That Defendant airline materially breached the contract in this regards as to each of the disciplines imposed on Plaintiff leading up to and including termination of Plaintiff's employment with Defendant airline.

68.  That under Section 22 of the CBA, paragraph C, sub paragraph 1e, Defendant airline had a contractual duty to provide Plaintiff with "...an opportunity to answer/defend against the charges brought against him or her" ...

69.  That Defendant airline materially breached the contract in this regards as to each of the disciplines imposed on Plaintiff leading up to and including termination of Plaintiff's employment with Defendant airline.

9

70. That pursuant to Section 22 of the CBA, paragraph D, sub paragraph 4, and Section 22 of the CBA, paragraph B, sub paragraph 1, Plaintiff filed grievances in the proscribed manner and Defendant airline had a duty to Plaintiff to hold a conference between Plaintiff, her union representative and the Director of In Flight within ten (10) days of Plaintiff's grievances for each of the disciplines imposed by Defendant airline.

71. That Defendant airline materially breached the contract in this regards as to each of the disciplines imposed on Plaintiff leading up to and including termination of Plaintiff's employment with Defendant airline.

72. That pursuant to Section 22 of the CBA, paragraph D, sub paragraph 4, and Section 22 of the CBA, paragraph B, sub paragraph 1, Plaintiff was entitled to be present at all investigative meetings.

73. That Defendant airline materially breached the CBA in this regards as Plaintiff was only present at one (1) of the investigative meetings.

74. That Defendant airline materially breached numerous other terms and conditions of the CBA.

75. That said material breaches of contract on the part of Defendant airline directly and proximately caused plaintiff to suffer damages including but not limited to:

   a. loss of benefit of the CBA;

   b. loss of employment;

   c. loss of raises and bonuses;

   d. loss or profit sharing;

   e. loss of retirement benefits;

10

f.  loss of social security reimbursement;

g.  loss of vacation time;

h.  consequential damages;

I.  out of pocket expenses;

j.  mental and emotional distress;

k.  humiliation;

l.  defamation;

m.  impairment of mental capacity;

n.  diminution of future earning capacity;

o.  time spent defending Plaintiff's reputation;

p.  costs of enforcing employment contract;

q.  attorney fees;

r.  court costs;

s.  stress and suffering;

t.  punitive damages;

u. lost wages; and

v. other damages.

WHEREFORE Plaintiff prays that this Honorable Court award her monetary damages greatly in excess of $1,000,000.00, costs, interests, attorney fees, punitive damages and any and all further relief that Plaintiff is entitled to at law and that this Honorable Court feels is just, prudent, fair and equitable in the circumstances.

11

## INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

76. Plaintiff incorporates and re-alleges each and every paragraph listed above as if more specifically and fully laid out herein by reference thereto.

77. That Defendant Nicole Trupiano embarked on an intentional course of action designed to inflict emotional distress upon Plaintiff.

78. That Defendant Nicole Trupiano stated to individuals and employees of Defendant airline that she was "out to get" Plaintiff.

79. That Defendant Nicole Trupiano was angry at Plaintiff based upon Defendant Nicole Trupiano's belief that Plaintiff was responsible for the firing of Defendant Nicole Trupiano's sister from her employment with a vending company.

80. That Defendant Nicole Trupiano was in a position of authority over Plaintiff in that she was a senior union member at Plaintiff's place of employment.

81. That Defendant Nicole Trupiano had a duty to inform Plaintiff of her rights and responsibilities as Plaintiff's union representative but intentionally failed to perform these duties in an attempt to cause Plaintiff to lose her job.

82. That Defendant Nicole Trupiano said untrue and malicious things about Plaintiff in an intentional attempt to cause Plaintiff emotional distress.

83. That Defendant Nicole Trupiano intentionally failed to properly represent Plaintiff in investigative meetings and intentionally made sure that Plaintiff did not appear for same knowing that Plaintiff had a right to do so.

84. That Defendant Nicole Trupiano intentionally acted and intentionally failed to act in

12

regards to Plaintiff and Plaintiff's rights in a manner designed to cause Plaintiff to lose her job.

85. That after Plaintiff was fired and began to contest her firing using the grievance procedures set forth in the CBA Plaintiff began to receive utterly filthy and anonymously cards.

86. That in addition to the utterly filthy and vulgar anonymously sent cards Plaintiff also began to receive, during this same time period, bills for subscriptions to magazines and the like.

87. That based upon knowledge, information and belief Defendant Nicole Trupiano sent said utterly filthy and vulgar anonymously sent cards and applied for magazine subscriptions or was in concert with those who sent them and knew of their existence and sending.  (Please see attached hereto as **Exhibit A** copies of said cards, envelopes and bills for subscriptions and please accept Plaintiff's apologies to this Honorable Court for having to review such filth)

88. That said cards and bills for magazine subscriptions were sent to Plaintiff in a further intentional attempt to cause Plaintiff emotional distress.

89. That due to the intentional course of conduct on the part of Defendant Nicole Trupiano and as a direct and proximate cause of the intentional course of conduct on the part of Defendant Nicole Trupiano suffered damages including, but not limited to:

      a.  loss of benefit of the CBA;

      b.  loss of employment;

      c.  loss of raises and bonuses;

      d.  loss or profit sharing;

      e.  loss of retirement benefits;

      f.  loss of social security reimbursement;

      g.  loss of vacation time;

13

    h.  consequential damages;

    I.  out of pocket expenses;

    j.  mental and emotional distress;

    k.  humiliation;

    l.  defamation;

    m.  impairment of mental capacity;

    n.  diminution of future earning capacity;

    o.  time spent defending Plaintiff's reputation;

    p.  costs of enforcing employment contract;

    q.  attorney fees;

    r.  court costs;

    s.  stress and suffering;

    t.  punitive damages;

    u.  lost wages; and

    v.  other damages.

90.  That Defendant Amy Jacobs was at all times relevant hereto an employee of Defendant airline.

91.  That Defendant Amy Jacobs was employed by Defendant airline in a management position and in a position of authority over Plaintiff.

92.  That Defendant Amy Jacobs embarked on an intentional course of action designed to inflict emotional distress upon Plaintiff.

93.  That Defendant Amy Jacobs stated to individuals and employees of Defendant airline

that she was "out to get" Plaintiff.

94.  That Defendant Amy Jacobs on several occasions used her authority as Plaintiff's supervisor to call and determine what time Plaintiff arrived at work in by finding out what time Plaintiff used her security pass/badge.

95.  That this was not done by Defendant Amy Jacobs in regards to any other of the Defendant airline employees.

96.  That Defendant Amy Jacobs has her own office.

97.  That on numerous occasions Amy Jacobs stood by the front entrance door waiting to see what time Plaintiff arrived for work.

98.  That this was done in an attempt to intimidate and frighten Plaintiff.

99.  That Plaintiff and other airline flight attendants were required to arrive at work an hour before boarding for their particular flights.

100.  That standard procedure, protocol, habit, routine, custom and practice was for the flight supervisor, Amy Jacobs, to check the sign-in book about ten (10) minutes after check-in to confirm that all scheduled flight attendants were present.

101.  That Defendant Amy Jacobs did not do this with Plaintiff but instead, on numerous occasions waited by the entrance door to the airline to try to catch Plaintiff walking in late.

102.  That Plaintiff was late by several minutes on a few occasions and these occasions were written up by Defendant Amy Jacobs.

103.  That on none of the occasions that Plaintiff was late was a flight ever delayed due to Plaintiff being late.

104.  That on none of the occasions that Plaintiff was late was the airline or Ms. Jacobs

required to find a substitute flight attendant.

105.  That Plaintiff was given a 1st step discipline for being late on July 9, 2007.

106.  That on this occasion Plaintiff was eight (8) minutes late.

107.   That on this occasion Plaintiff called in to advise that she was running late in order to give the airline notice.

108.  That Plaintiff was given a 2nd step discipline for being late on July 11, 2007.

109.  That on this occasion Plaintiff was three (3) minutes late and Amy Jacobs was waiting at the entrance door for Plaintiff to walk in.

110.  That on this occasion Plaintiff called in to notify the airline that she was running late.

111.  That on this occasion the flight that Plaintiff was to attend was delayed an hour and a half and management, including Amy Jacobs, knew that the flight was delayed, not due to Plaintiff, and yet still disciplined Plaintiff for being three (3) minutes late.

112.  That Plaintiff was given a 3rd and final discipline for being late on August 17, 2007.

113.  That on this occasion Plaintiff was seven (7) minutes late.

114.  That Plaintiff was given a final discipline for being late on August 22, 2009.

115.  That on this occasion Plaintiff was nine (9) minutes late as she was pulled over for speeding and issued a State of Michigan Uniform Law Citation for the offense of speeding which she provided to Defendant airline, Defendant Nicole Trupiano, Defendant Robert Love and Defendant Amy Jacobs.

116.  That Plaintiff called in on each and every occasion that she was late.

117.  That none of the times that Plaintiff was late caused any flight delays or phone calls

16

for a substitute flight attendant.

118.  That Defendant Amy Jacobs knew of numerous other flight attendants who had arrived for work late but were never disciplined.

119.  That Defendant airline's records will attest to the fact that numerous other flight attendants had arrived several minutes late on numerous occasion and were not disciplined.

120.  That Defendant airline's records kept in the normal course of business will show that Defendant Amy Jacobs treated Plaintiff differently than other flight attendants and that there was a pattern of intentional harassment of Plaintiff in an attempt to inflict emotional distress.

121.  That Defendant Amy Jacobs misrepresented to upper management that she made several phone calls to Plaintiff and that Plaintiff failed to call her back.

122.  That upon information and belief Defendant Amy Jacobs did not make several phone calls to Plaintiff on or about July 11, 2007, but claimed to upper management at the Defendant airline that she did in order to further inflict emotional distress upon Plaintiff.

123.  That further, Defendant Amy Jacobs misrepresented to upper management at Defendant airline that Plaintiff failed to return phone calls and was insubordinate in an attempt to further intimidate, harass and threaten Plaintiff and this was done in an malicious and deliberate attempt to further inflict emotional distress upon Plaintiff.

124.  That after Plaintiff was fired and began to contest her firing using the grievance procedures set forth in the CBA Plaintiff began to receive utterly filthy and anonymously cards.

125.  That in addition to the utterly filthy and vulgar anonymously sent cards Plaintiff also began to receive, during this same time period, bills for subscriptions to magazines and the

like.

126.   That based upon knowledge, information and belief Amy Jacobs sent said utterly filthy and vulgar anonymously sent cards and applied for magazine subscriptions or was in concert with those who sent them and knew of their existence and sending.  (Please see attached hereto as **Exhibit A** copies of said cards, envelopes and bills for subscriptions and please accept Plaintiff's apologies to this Honorable Court for having to review such filth)

127.   That said cards and bills for magazine subscriptions were sent to Plaintiff in a further intentional attempt to cause Plaintiff emotional distress.

128.   That as a direct and proximate cause of the intentional actions and inactions of Defendant Amy Jacobs Plaintiff suffered damages including, but not limited to:

   a.  loss of benefit of the CBA;

   b.  loss of employment;

   c.  loss of raises and bonuses;

   d.  loss or profit sharing;

   e.  loss of retirement benefits;

   f.  loss of social security reimbursement;

   g.  loss of vacation time;

   h.  consequential damages;

   I.  out of pocket expenses;

   j.  mental and emotional distress;

   k.  humiliation;

   l.  defamation;

18

m.  impairment of mental capacity;

n.  diminution of future earning capacity;

o.  time spent defending Plaintiff's reputation;

p.  costs of enforcing employment contract;

q.  attorney fees;

r.  court costs;

s.  stress and suffering;

t.  punitive damages;

u.  lost wages; and

v.  other damages.

129.  That Defendant Robert Love was at all times relevant hereto an employee of Defendant airline.

130.  That Defendant Robert Love was employed by Defendant airline in a management position and in a position of authority over Plaintiff.

131.  That Defendant Robert Love embarked on an intentional course of action designed to inflict emotional distress upon Plaintiff.

132.  That Defendant Robert Love stated to an employee of Defendant airline that he was going to "make an example" out of Plaintiff.

133.  That Defendant Robert Love intentionally failed to return e-mails and phone calls from Plaintiff.

134.  That Defendant Robert Love denied receiving grievances that were filed by Plaintiff in an intentional attempt at inflicting emotional distress on Plaintiff.

19

135. That on October 15, 2007, Defendant Robert Love, Defendant Nicole Trupiano, Plaintiff and others had a meeting in which Defendant Robert Love admitted that FMLA covered absences were being used against Plaintiff.

136. That after the meeting of October 15, 2007, Plaintiff e-mailed and called Defendant Robert Love in an attempt to schedule a private meeting with him to lay out the convergence of several very traumatic events outside of work that were impacting Plaintiff's life.

137. That Defendant Robert Love intentionally failed to return these phone calls and e-mails in an attempt to further inflict emotional distress upon Plaintiff.

138. That Plaintiff was forced to go to another supervisor at Defendant airline and draft letters in order to force another meeting with Defendant Robert Love as Defendant Robert Love was intentionally avoiding Plaintiff in an attempt to further upset and traumatize Plaintiff.

139. That another meeting was eventually held between Plaintiff and Defendant Robert Love on or about December 7, 2007.

140. That at said meeting Defendant Robert Love claimed to be sympathetic to Plaintiff's issues and concerns.

141. That during arbitration in regards to this matter Defendant Robert Love denied receiving the letters from Plaintiff and denied that the December 7, 2007, meeting ever took place.

142. That this was once again done in an intentional effort on the part of Defendant Robert Love to inflict emotional distress upon Plaintiff.

143. That after Plaintiff was fired and began to contest her firing using the grievance procedures set forth in the CBA Plaintiff began to receive utterly filthy and anonymously cards.

20

144.  That in addition to the utterly filthy and vulgar anonymously sent cards Plaintiff also began to receive, during this same time period, bills for subscriptions to magazines and the like.

145.  That based upon knowledge, information and belief Defendant Robert Love sent said utterly filthy and vulgar anonymously sent cards and applied for magazine subscriptions or was in concert with those who sent them and knew of their existence and sending.  (Please see attached hereto as **Exhibit A** copies of said cards, envelopes and bills for subscriptions and please accept Plaintiff's apologies to this Honorable Court for having to review such filth)

146.  That said cards and bills for magazine subscriptions were sent to Plaintiff in a further intentional attempt to cause Plaintiff emotional distress.

147.  That as a direct and proximate cause of the intentional actions and inactions of Defendant Robert Love Plaintiff suffered damages including, but not limited to:

        a.  loss of benefit of the CBA;

        b.  loss of employment;

        c.  loss of raises and bonuses;

        d.  loss or profit sharing;

        e.  loss of retirement benefits;

        f.  loss of social security reimbursement;

        g.  loss of vacation time;

        h.  consequential damages;

        I.  out of pocket expenses;

        j.  mental and emotional distress;

21

k.  humiliation;

l.  defamation;

m.  impairment of mental capacity;

n.  diminution of future earning capacity;

o.  time spent defending Plaintiff's reputation;

p.  costs of enforcing employment contract;

q.  attorney fees;

r.  court costs;

s.  stress and suffering;

t.  punitive damages;

u.  lost wages; and

v.  other damages.

WHEREFORE Plaintiff prays that this Honorable Court award her monetary damages greatly in excess of $1,000,000.00, costs, interests, attorney fees, punitive damages and any and all further relief that Plaintiff is entitled to at law and that this Honorable Court feels is just, prudent, fair and equitable in the circumstances.

## NEGLIGENCE/BREACH OF DUTY TO REPRESENT

148.  Plaintiff incorporates and re-alleges each and every paragraph listed above as if more specifically and fully laid out herein by reference thereto.

149.  That Defendant union at all times relevant hereto had a duty to represent Plaintiff in a fair, diligent, honest and competent manner.

150.  That Plaintiff herein was a dues paying and active member of Defendant union at all

times relevant hereto.

151.  That Plaintiff relied upon her union and union representatives to inform her of her rights and responsibilities, protect her rights and enforce the rights and privileges that she enjoyed under the CBA.

152.  That contrary to its duty to Plaintiff the union failed to advise and inform Plaintiff of her rights and responsibilities and protect and enforce her rights under the CBA.

153.  That Defendant union and its representatives knew or should have known of the extreme pressures that Plaintiff was facing due to a convergence of personal traumas all happening at around the same time period said time period falling in the last year before Plaintiff's termination.

154.  That Defendant union had a duty and obligation to do an intervention with Plaintiff to address the convergence of personal traumas and steer Plaintiff into the Employee Assistance Program (herein after referred to as "EAP") to help Plaintiff address and correct any problems that were affecting her job performance.

155.  That Defendant union breached its duty and obligation to Plaintiff in regards to conducting an intervention.

156.  That Defendant union had a duty and obligation to properly and adequately advise Plaintiff to her rights and obligations under the CBA, specifically, but not limited to, her obligations should she wish to file a grievance regarding discipline and her rights in regards to responding to letters of discipline and filing grievances in regards to same.

157.  That Defendant union breached its duty and obligations to Plaintiff in this regards in part by not adequately responding to the grievances filed by Plaintiff in an attempt to contest the

23

alleged conduct for which she was being disciplined.

158. That Defendant union had an obligation and duty under the CBA and the agreement between Plaintiff and Defendant union to appear at all investigative meetings held in regards to the discipline of Plaintiff and to properly and competently represent her at said meetings.

159. That in contravention of its duties and obligations to client in this regards Defendant union failed to fairly, properly, adequately and competently represent Plaintiff as said investigative meetings.

160. That Defendant union, through Defendant Nicole Trupiano, intentionally misrepresented and under represented Plaintiff at all investigative meetings that are relevant to these proceedings.

161. That Defendant, Nicole Trupiano, was upset with and angry at Plaintiff regarding incidents which took place outside the course of employment, some of which incidents are stated above, and as such severely misrepresented Plaintiff at all investigative meeting that took place in regards to Plaintiff.

162. That the Defendant union attorney who represented Plaintiff at System Board of Adjustment (hereinafter referred to as "SBA") did not properly and adequately represent Plaintiff.

163. That said Defendant union attorney failed to bring up the fact that all of the missed work that was covered under FMLA and used as negative factor in Plaintiff's discipline should not have been used as a negative factor in Plaintiff's discipline and it was in fact illegal under federal law to use absences covered under FMLA as a negative factor in disciplining Plaintiff.

164. That said union attorney failed to present to the SBA the fact that numerous other

24

employees of Defendant airline had committed many more and more severe breaches of their

duties to Defendant airline but had in fact not been disciplined at all even with the knowledge by

Defendant airline of said breaches by other employees.

165. That as a direct and proximate cause of the negligence of Defendant union and

breach of duty to represent by Defendant Union Plaintiff was caused to suffer damages including,

but not limited to:

        a.  loss of benefit of the CBA;

        b.  loss of employment;

        c.  loss of raises and bonuses;

        d.  loss or profit sharing;

        e.  loss of retirement benefits;

        f.  loss of social security reimbursement;

        g.  loss of vacation time;

        h.  consequential damages;

        I.  out of pocket expenses;

        j.  mental and emotional distress;

        k.  humiliation;

        l.  defamation;

        m.  impairment of mental capacity;

        n.  diminution of future earning capacity;

        o.  time spent defending Plaintiff's reputation;

        p.  costs of enforcing employment contract;

q.  attorney fees;

r.  court costs;

s.  stress and suffering;

t.  punitive damages;

u. lost wages; and

v. other damages.

WHEREFORE Plaintiff prays that this Honorable Court award her monetary damages greatly in excess of $1,000,000.00, costs, interests, attorney fees, punitive damages and any and all further relief that Plaintiff is entitled to at law and that this Honorable Court feels is just, prudent, fair and equitable in the circumstances.

## FAMILY MEDICAL LEAVE ACT - RETALIATION

166.  Plaintiff incorporates and re-alleges each and every paragraph listed above as if more specifically and fully laid out herein by reference thereto.

167.  That the Family and Medical Leave Act of 1993, Title 29, Part 825 of the Code of Federal Regulations, applies to the Defendant Spirit Airlines, Inc.

168.  That the Family and Medical Leave Act of 1993, Title 29, Part 825 of the Code of Federal Regulations will hereinafter be referred to as "FMLA".

169.  That Plaintiff can show a Prima Facie case of discrimination on the part of Defendant airline.

170.  That Plaintiff was at all times relevant an employee covered under FMLA.

171.  That Plaintiff was at all times relevant hereto protected under FMLA.

172.  That Plaintiff suffered an adverse employment decision.

173.  That Plaintiff was treated less favorably that employees of Defendant airline who had not requested leave under FMLA.

174.  That an adverse employment decision was made because of Plaintiff's request for leave under FMLA.

175.  That there a causal connection between the adverse action on the part of Defendant airline and Plaintiff's request for leave under FMLA.

176.  That Plaintiff exercised a protected right under FMLA.

177.  That adverse employment action was taken by Defendant airline against Plaintiff.

178.  That there is a causal nexus between the exercise of Plaintiff's rights under FMLA and the adverse action taken by Defendant airline, to wit; termination of Plaintiff.

179.  That there is ample case law in the federal courts which will support Plaintiff's claims that her leave taken under the protection of FMLA was used as adverse factor by Defendant in terminating Plaintiff's employment with Defendant airline.

180.  That if Defendant airline claims that Plaintiff was fired for legitimate, nondiscriminatory reasons this is just a pretext for discrimination or retaliation.

181.  That as evidence that Defendant airline used FMLA covered leave by Plaintiff as a negative factor in disciplinary action against Plaintiff, Plaintiff intends to introduce as evidence in this matter different letters regarding investigative meeting resolutions and the final termination letter to Plaintiff all of which show that FMLA covered leave by Plaintiff was listed as a negative factor in Plaintiff's discipline in contravention of federal law, specifically FMLA.

182.  That it is clear that in an "Initial Warning - Step 1" letter dated March 9, 2007 that Defendant airline used absences that were all covered under FMLA in disciplining Plaintiff.

27

183.  That said action is in clear contravention to FMLA and illegal.

184.  That there can be no doubt that Defendant airline illegally used FMLA covered medical leave and absences on the part of Plaintiff as a negative factor in disciplining Plaintiff

185.  That as a direct and proximate cause of Defendant airline's breach of federal law, specifically, FMLA, Plaintiff was caused to suffer damages including, but not limited to:

      a.  loss of benefit of the CBA;

      b.  loss of employment;

      c.  loss of raises and bonuses;

      d.  loss or profit sharing;

      e.  loss of retirement benefits;

      f.  loss of social security reimbursement;

      g.  loss of vacation time;

      h.  consequential damages;

      I.  out of pocket expenses;

      j.  mental and emotional distress;

      k.  humiliation;

      l.  defamation;

      m.  impairment of mental capacity;

      n.  diminution of future earning capacity;

      o.  time spent defending Plaintiff's reputation;

      p.  costs of enforcing employment contract;

      q.  attorney fees;

r. court costs;

s. stress and suffering;

t. punitive damages;

u. lost wages; and

v. other damages.

WHEREFORE Plaintiff prays that this Honorable Court award her monetary damages greatly in excess of $1,000,000.00, costs, interests, attorney fees, punitive damages and any and all further relief that Plaintiff is entitled to at law and that this Honorable Court feels is just, prudent, fair and equitable in the circumstances.

Respectfully submitted,

_Michelle H. Dudzinski_

Michelle H. Dudzinski
Plaintiff, Pro Se
7311 Yager Street
Saint Clair, MI 48079
(586) 303-5588

Dated:  December 24, 2009

29

# EXHIBIT A

48001+1223



Ma. M. Dudzinski
914 Liberty
Algonac, MI 48001

USPS FIRST-CLASS FOREVER

DETROIT MI 482

You're going
down for
the count,
8, 9, 10...

# I1, I2, I3, I4...



USA FIRST-CLASS FOREVER

Ms. Dudzinski
914 Liberty
Algonac, Mi 48001

48001+1223

FOR YOUR BIRTHDAY

A Chinese Menu





Bananas & Cream ™
a division of Comstock Cards, Inc. © 1999
Reno, NV 89502
Illustration by:
Printed in USA

XH1645 · 2.75
Canada 3.75
AUSTRALIA CMV

www.comstockcards.com





Michelle Dudzinsky
9H Liberty
Algonac MI
18001



A CHRISTMAS GIFT
JUST FOR YOU, GIRL...

Designed by Marilyn Wassy-Fried



10220956

0 42823 29279 8

©RPG
**USA 2.79**
CDN 4.00
Made in China

RIS-10220956
10323823
On recycled paper since 1971

A 6-Pound Cock

Enjoy!

ROYAL OAK MI 480

27 MAR 2008 PM 2 T

"LET US DARE
THINK, SPEAK
John Adams
powered

Michella Dudzinski
914 Liberty
Algonac, Mi.
48001

48001+1223



**TRY IT, YOU MIGHT LIKE IT!**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
**PAID**
TIPTON, IA
PERMIT NO. 100



# SUSPENSION NOTICE

# FitPregnancy

P.O. Box 37266
Boone, IA 50037-0266
www.fitpregnancy.com

## INVOICE

FTP  0145960340  80841J003  04  12/02/2008  FTPBL001  M1PG0S  381

MICHELLE DUDZINSKI
914 LIBERTY ST
ALGONAC      MI 48001-1229

| | Account Status | Amount Due |
|---|---|---|
| | SUSPENDED | $9.97 for 6 issues |

Return this stub with payment.  Make check payable to FIT PREGNANCY

**SERVICE HAS BEEN SUSPENDED FOR NONPAYMENT.
PAY IMMEDIATELY TO REINSTATE SERVICE**

**PLEASE CHECK:**
☐ Payment Enclosed
☐ Charge My:
☐ VISA  ☐ MC  ☐ AMEX  ☐ DISC

Acct. No. _____

_____
Signature                        Exp.

If payment has been sent, please
disregard this notice.

FTP32001M        FTP01459603400827500143528009970000000000000306        —

- - - - - - - - - - - - - - - - - - - - - - - - DETACH HERE - - - - - - - - - - - - - - - - - - - - - - - -

Dear Michelle Dudzinski:

I regret having to inform you that your service has been suspended for non-payment.

To date, we've sent you one issue of FIT PREGNANCY and <u>two</u> previous requests for payment of your subscription invoice.

You haven't canceled. You haven't notified us of non-receipt of your magazine. You haven't told us we are billing you incorrectly. But you haven't paid.

We were left with no choice but to suspend your subscription. You, on the other hand, have a choice:

<u>Tell us yes</u>, you want your subscription to FIT PREGNANCY to resume, and that your payment is enclosed.

<u>Tell us you've already paid</u>, and enclose a copy of your canceled check (front and back) or credit card statement. We will gladly credit your payment and reinstate your subscription.

<u>Tell us no</u>, that you do not intend to honor your subscription agreement.

It's of the utmost importance that we hear from you at once. If we are unable to settle your account through normal channels, we will be forced to take more serious action.

Sincerely,

*Katie Livanos*

Katie Livanos
FIT PREGNANCY

FIT PREGNANCY • P.O. Box 37478•Boone, IA 50037-0478

WED02122A

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
**PAID**
TIPTON, IA
PERMIT NO. 100

# Welcome!

**INVOICE
ENCLOSED**

# FitPregnancy™

P.O. Box 37266
Boone, IA 50037-0266
www.fitpregnancy.com

| | Payment Was Due | Date Received By | Amount Due |
|---|---|---|---|
| | 10/28/08 | | $9.97 for 6 Issues |

Return this stub with payment.  Make check payable to FIT PREGNANCY

## INVOICE

FTP  0145960340  R0841J001  02  10/07/2008  FTPBL001  L1560S  660

**MICHELLE DUDZINSKI**
**914 LIBERTY ST**
**ALGONAC      MI 48001-1229**

**PLEASE CHECK:**

☐  Payment Enclosed
☐  Charge My:
☐  VISA  ☐  MC  ☐  AMEX  ☐  DISC

Acct. No. _____

Signature _____  Exp. _____

☐  Increase my savings—add 1 more year for
just $7.00, giving me 2 years for only $16.97.

FTP32001M      FTP01459603400827500143528009970169700000000104

-------------------------------------------- DETACH HERE --------------------------------------------

Dear Michelle Dudzinski

On behalf of everyone at FIT PREGNANCY magazine, I'm delighted to welcome you
to our family. The circulation department has assured me your subscription has been
processed, so watch for your first issue -- you'll receive it soon.

Please take a moment to look over the enclosed invoice to be sure we have everything
in order -- name, address, subscription price and term. If there are any corrections,
just note them on the invoice and return it to us with your payment. You'll find a
reply envelope enclosed for your convenience.

We have also enclosed a brochure with information about your subscription. Please
keep it for future reference and answers to some questions you may have.

Again, welcome and thank you for your payment. We look forward to having you as
a subscriber for many years to come.

Sincerely,

*Tom Pesik*

Tom Pesik
Marketing Director

P.S. As a thank you for prompt payment, we'd like to offer you the chance to renew
early at even greater savings. See your invoice for details.

**Better Homes** **and Gardens®** Magazine
1716 Locust Street
Des Moines, Iowa 50309-3023

PRSRT STD
U.S. POSTAGE
**PAID**
Better Homes
and Gardens®

**DUE BY:**
**1/19/09**

*************AUTO**3-DIGIT 480
MICHELLE DUDZINSKI
914 LIBERTY ST
ALGONAC MI 48001-1229

# DO NOT BEND
Statement of Benefits enclosed

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Michelle Helene Dudzinski

### DEFENDANTS
Spirit Airline, Inc., AFA/CWA, Nicole Trupiano, Amy Jacobs, Robert Love

(b) County of Residence of First Listed Plaintiff  St. Clair County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Wayne
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)  Pro Se
7311 Yager Street
St. Clair Township, MI 48079 (586) 303-5588

Attorneys (If Known)  Not Known

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

Citizen of This State  PTF ☒1  DEF ☒1   Incorporated or Principal Place of Business In This State  PTF 4  DEF ☒

Case: 2:09-cv-15009
Assigned To : Lawson, David M.
Referral Judge: Whalen, R. Steven
Assign. Date : 12/24/2009
Description: cmp dudzinski v. spirit airlines, et al (tm)

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 29, Part 825 CFR - Family and Medical Leave Act
Brief description of cause:
Violation of FMLA, Wrongful termination, Intentional Infliction of Emotional Distress

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,000,000.00
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)   JUDGE  N/A   DOCKET NUMBER  N/A

DATE  December 24, 2009

SIGNATURE OF ATTORNEY OF RECORD  Michelle Dudzinski

### FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes
                                                                    ☒ No

**If yes, give the following information:**

Court:     N / A

Case No.:   N / A

Judge:     N / A


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other
          court, including state court? (Companion cases are matters in which        ☐ Yes
          it appears substantially similar evidence will be offered or the same      ☒ No
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

**If yes, give the following information:**

Court:     N / A

Case No.:   N / A

Judge:     N / A


Notes :