UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE HELENE DUDZINSKI,   Case No. 09-15009

    Plaintiff,   District Judge David M. Lawson

v.   Magistrate Judge R. Steven Whalen

SPIRIT AIRLINES, INC., ASSOCIATION
OF FLIGHT ATTENDANTS/
COMMUNICAITON WORKERS ASSOCIATION,
ROBERT LOVE, AMY JACOBS and NICOLE
TRUPIANO,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court are the following two motions: (1)Motion for Summary Judgment filed by Defendants Spirit Airlines, Inc. ("Spirit") and Amy Jacobs ("Jacobs")[Doc. #74]; and (2) Motion for Summary Judgment filed by Defendant Association of Flight Attendants/Communication Workers Association, AFL-CIO ("AFA")[Doc. #82], which have been referred for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both motions be GRANTED.

### I.   FACTS

On December 27, 2010, Plaintiff filed a First Amended Complaint [Doc. #29] raising the following claims: (1) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., by Defendants Spirit, Jacobs and Robert Love; (2) breach of duty of fair representation by Defendants AFA and Nicole Trupiano;[1] and (3) violation of collective

---

[1] Trupiano was dismissed on July 26, 2011. Doc. #62.

bargaining agreement by Defendant Spirit. Plaintiff also seeks declaratory relief with regard to an arbitration award.

Plaintiff was a flight attendant employed by Spirit. She was discharged on January 2, 2008. She states that although her discharge notification cited an absence on March 9, 2007, as well as "several other disciplinary write-ups over small or technical breaches of [her] obligations to the airline," her employment was in fact terminated in retaliation for her taking FMLA-protected leaves. *First Amended Complaint*, ¶¶ 23-25. Plaintiff also claims that because she took intermittent FMLA leave, she was subject to discipline, harassment and disparate treatment "not suffered by other Flight Attendants for the same or similar behavior, and verbal harassment." *Id.* ¶ 22.

Plaintiff claims that her union, Defendant AFA, failed to pursue grievances and adequately represent her under the Spirit/AFA Collective Bargaining Agreement ("CBA"), in violation of "its duty of fair representation owed to Plaintiff, in connection with discipline and discharge." *Id.* ¶¶ 27-28, 44.

Appended to Plaintiff's First Amended Complaint is a copy of an arbitration decision, signed by Jay C. Fogelberg, affirming Spirit's decision to fire the Plaintiff, and denying her grievance. Plaintiff asks the Court to declare that the arbitration award is not final and binding, owing to Defendant AFA's breach of the duty of fair representation. *Id.* ¶¶ 49-51.

Defendant Spirit has submitted a number of Exhibits with its Motion for Summary Judgment [Doc. #74]. Exhibit 1 is the CBA between Spirit and the AFA. Exhibit 2 is Spirit's Addendum to the Employee Handbook, effective July 1, 2003. The Addendum sets forth a four-step progressive discipline policy regarding violations of Spirit's rules and regulations. The first step is an initial warning; the second step is a written warning; the third step is a final written warning; and the fourth step is termination. These apply to infractions

occurring during a rolling 12-month period. With respect to attendance and lateness, the Addendum states:

> "It is the expectation of the company that every Flight Attendant will report to work at the specified time and on each day for which he/she is scheduled. Chronic cases of tardiness will result in the appropriate disciplinary action, up to and including termination."

The Addendum defines "tardiness" as "arriving/checking in 1 minute late after designated report times for trips or training."

In March of 2007, Plaintiff was issued an initial warning when she entered an unauthorized area by swiping an expired Security Identification Display Area ("SIDA") badge. *See* Spirit's Exhibit 11. The warning stated that the infraction was a "serious infraction[] that can result in being removed from your position...or an immediate termination." *Id*.

On July 9, 2007, Plaintiff received an initial warning (Step I) disciplinary letter based on arriving eight minutes late for her scheduled check-in time. *See* Spirit's Exhibit 12. Plaintiff was also cited for being insubordinate toward a member of management, and was warned that "insubordination or refusal to follow instructions is a serious infraction which may result in immediate termination." *Id*. The letter stated that "any further infractions of Spirit Airlines Policies and Procedures would result in further disciplinary action up to and including discharge from employment." *Id*. In response, Plaintiff wrote a letter on July 10, 2007 (Spirit's Exhibit 13), explaining her tardiness, and stating, "I never denied being late." At her deposition, Plaintiff also conceded that she was late for her check-in on July 9, 2007, and that the Step I letter was unrelated to her use of FMLA leave. *Dudzinski Dep.*, Spirit's Exhibit 3, 175-176, 187-188, 203.

Plaintiff received a Step II disciplinary letter for being late for check-in on July 11, 2007. *See* Spirit's Exhibit 15. The letter again warned her that continued failure to correct

her job performance deficiencies "will result in further disciplinary action up to and including discharge from your employment...." *Id*. Plaintiff admitted that she was late, and testified that the July 11 report was unrelated to her use of FMLA leave. *Dudzinski Dep*, 247, 272.

Plaintiff was again late for her check-in time on August 17, 2007 and August 27, 2007. Plaintiff conceded that she was late on those two occasions. *Dudzinski Dep*, 273. *See also* Spirit's Exhibit 14 (time-line prepared by Plaintiff). She received written notification of an investigative meeting to be held regarding her disciplinary reports (also referred to as "late reports"). She was advised that she could appear with an AFA representative. *See* Spirit's Exhibits 17 and 18.

Nicole Trupiano, the AFA representative, informed Spirit that Plaintiff would consent to a three-day suspension without pay and a final written warning. *Trupiano Dep*., Spirit's Exhibit 6, 16, 17. Trupiano testified as follows regarding Plaintiff's waiver of her presence and acceptance of discipline short of termination:

> "I spoke to Michelle on the phone and I spoke to Michelle in person and told her what she was facing, and I didn't...I told her straightforward she was facing termination, it was her choice to either go that route or I told her that I had talked to Bob [Love], we had discussed suspension in lieu of termination, and she agreed to it. I explained to her how long the grievance process takes without pay, without benefits. She chose the suspension.. *Id.* 16-17.

Trupiano testified that she settled the "final warning" disciplinary case short of a final warning investigatory meeting, with Plaintiff's verbal consent. *Id*. 17. Robert Love testified that if Plaintiff had not accepted this offer, she would have been terminated. *Love Dep*. 51. Pursuant to this agreement, Plaintiff received a final written warning on September 26, 2007. *See* Spirit's Exhibit 19. The letter stated, "In accordance with the agreement of the parties as stated above, we are extending to you one more opportunity to correct this situation. As such this is–in fact–your **Final Warning** that failure to immediately correct these attendance deficiencies will result in your discharge from the employ of Spirit Airlines." (Emphasis in

original).

Plaintiff was designated a "no show" on October 15, 2007, and on November 9, 2007, an investigative meeting was held. Plaintiff was represented by Nicole Trupiano of the AFA. *Dudzinski Dep.* 298. By way of excuse, Plaintiff stated that she got a flat tire on the way to the airport. *Id.* 295. Love accepted that defense, and instead of firing her or imposing any discipline, he issued a Mitigating Circumstances letter on November 13, 2007. *See* Spirit's Exhibit 22.

On November 13, 2007 (coincidentally and ironically the same date the Mitigating Circumstances letter was issued), Plaintiff was again late for her check-in time. She admitted that she was late, stating that she was pulled over for speeding. *Dudzinski Dep.* 317. Plaintiff also conceded that she was 9:07 minutes late for her check-in. *Id.* 322. An investigative meeting was held on December 19, 2007. Present with Plaintiff were two AFA representatives, Nicole Trupiano and Patrice Smith. *See* Spirit's Exhibit 24. On December 27, 2007, Plaintiff was terminated for excessive tardiness. *Id.*.

Following Plaintiff's termination, the AFA filed a grievance on her behalf. *See* Spirit's Exhibit 25. The grievance went to arbitration; Plaintiff was represented by Stephani Lewis, Senior Staff Attorney with the AFA. *See* Exhibit 26. By a vote of 2-1, the arbitratiion panel upheld the Plaintiff's termination. The panel majority rejected the AFA's argument that a number of Plaintiff's absences were covered by the FMLA, stating, "A close examination of the documents however, indicate[s] that the leave was granted on an 'intermittent basis' and do not indicate any blanket approval during the months of March and April, 2007. Moreover, the record does not establish as fact that any of the infractions she was charged with occurred on specific days which were covered under the FMLA, or that they were counted against her when assessing the discipline that was ultimately imposed."

As to Plaintiff's absences for illness on September 28, 2006 and January 3, 2007 (which predate the late reports that led to her termination), the disciplinary letters that list her absences indicate "N/A", or "no action" next to those dates. Robert Love testified that the sick absences had no bearing on her termination. *Love Dep.* 23-25. UNUM Provident, the FMLA administrator for Spirit, approved Plaintiff for intermittent FMLA leave from January 2, 2007 to February 2, 2007. *See* Spirit's Exhibit 28. The letter from UNUM states, in boldface type, "**Remember to contact UnumProvident Corporation and your employer to report any intermittent leave taken.**" *Id.* Plaintiff indicated in an email to Mary Comis, dated December 31, 2007, that she did not report September 28, 2006 or January 3, 2007 as FMLA absences. She wrote, "I was put on a final months ago for absences with the fmla in the end of September. These days were months earlier Sept. 06, Jan 07, March 07. I was approved but, did not call in hours. I thought I did and would of but when I found out is was too late months later." *See* Spirit's Exhibit 27. She backtracked from this statement at her deposition, stating that someone named "Erica" at UNUM told her that her FMLA requests for those dates had been "coded" and sent to Spirit, and that Plaintiff did call in the FMLA absences. *Dudzinski Dep.* 158-160, 347-348. However, she conceded that she had no documentation showing that she requested intermittent FMLA leave on those dates. *Id.* 661. Robert Love testified that he was never provided with documentation that the September 28, 2006 or January 3, 2007 absences were reported as FMLA leave, or that they were in fact utilized as FMLA leave. *Love Dep.* 49.

Plaintiff has submitted a notarized "Declaration" as Exhibit 2 to her response [Doc. #83]. Much of the Declaration contains opinion and hearsay. However, Plaintiff states that on March 6, 2007, she received a Step I letter for a security breach violation, where her access badge (the "red badge") had expired. She states that three other Spirit employees told

her that they received "red badge" violations, but had not been written up as a result. *Plaintiff's Declaration*, ¶ 3. Regarding the offer of a three-day suspension for the August, 2007 infractions, Plaintiff states that while on an overnight trip, she received a telephone call from Nicole Trupiano, who said she was in a meeting with Robert Love, and told her they could take care of the matter now rather than wait for a later date. She states that later, Trupiano called her back to tell her that she was to receive a three-day suspension with a final warning. She states that had she "known the situation was that serious," she would not have allowed Trupiano to proceed without her. *Id.* ¶ 10.

Plaintiff states that at the meeting regarding the October 15, 2007 "no show" incident (which was excused for mitigating circumstances), Robert Love told her that her "approved FMLA absences were being used against her." *Id.* ¶ 13. She also testified to Love's alleged statement at the arbitration hearing. *See AFA's Motion, Exhibit A, Tab 32*, at 100.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. DISCUSSION
#### A. Spirit and Jacobs [Doc. #74]
#### 1. FMLA Retaliation[2]

The FMLA makes it unlawful for any employer to "discharge" or "discriminate" against anyone for taking part in proceedings or inquiries under the FMLA. *See* 29 U.S.C. § 2615(b). To prevail under a retaliation theory, the employee must show that the employer discharged or otherwise discriminated against her for exercising FMLA rights or opposing any practice made unlawful by the FMLA. *Arban v. West Pub. Corp.,* 345 F.3d 390, 400–01 (6th Cir.2003).

A retaliation claim may be based on either direct or circumstantial evidence. "Direct evidence generally involves an admission or a statement by the decision maker regarding his discriminatory intent." *Lewis v. Sch. Dist. # 70,* 523 F.3d 730, 742 (7th Cir.2008). "In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been

---

[2] Although Spirit and Jacobs have presented arguments regarding a claim of FMLA interference, Plaintiff's First Amended Complaint does not raise an interference claim. In any event, Plaintiff did not respond to the Defendants' arguments on FMLA interference, so even if it had been raised, the claim would be deemed abandoned. Therefore, there is no need for the Court to consider the non-issue of FMLA interference.

motivated by impermissible discrimination." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000); *see also In re Rodriguez,* 487 F.3d 1001, 1007 (6th Cir.2007).

In this case, Plaintiff has arguably presented direct evidence of retaliation in the form of her own testimony at the arbitration hearing, and in her declaration (however self-serving that testimony might be), that Robert Love directly told her that her FMLA absences were being used against her.[3]

Under the facts of this case, Spirit has met its burden of showing that it would have terminated the Plaintiff's employment based on excessive lateness, regardless of her having taken FMLA leaves. First, Plaintiff was approved for and used FMLA leave beginning in 2002, and throughout her employment, with no adverse action whatsoever. *See* Spirit's Exhibit 10 (FMLA leave approvals); *Dudzinski Dep*. 379. In March of 2007, she was cited for entering a secure area with an expired SIDA badge. While this infraction could have resulted in her being removed from her position pending further investigation, or being immediately terminated, she was merely given a Step I warning letter. At the time of the incident, Plaintiff had taken many FMLA intermittent leaves. *See* Spirit's Exhibit 11. Yet, she got the lowest level of discipline available. Plaintiff showed up late on July 9 and July 11, 2007.[4] When Plaintiff showed up late for the third and fourth time in August of 2007, Spirit could have terminated her under its progressive discipline policy. Instead, she was

---

[3] However, Plaintiff also testified at her deposition that no one at Spirit ever told her she was being terminated because she used FMLA leave. *Dudzinski Dep*, 342.

[4] Plaintiff suggests that because she was three minutes late on July 11th, that incident ought not to have counted, because "[a]ccording to the July 22, 2009 Spirit Airlines Inflight Service Performance Management Policy...,'A Flight Attendant is considered late if he/she checks in six minutes after the designated report time for trips.'" *Plaintiff's Response*, 2-3. However, that policy was not in effect in July of 2007. The operative policy in 2007 was the Addendum to the Employee Handbook, effective July 1, 2003, which defines "tardiness" as being one minute late. *See* Spirit's Exhibit 2.

offered a three-day suspension and a final warning. On October 15, 2007, Plaintiff was a "no show." Instead of firing her, she was excused for "mitigating circumstances," and her employment continued.

Thus, if Spirit were concerned enough about Plaintiff's FMLA leaves to terminate her employment, it had many opportunities to do so before November of 2007, yet it continued her employment. Significantly, it is undisputed that none of the incidents where Plaintiff was late, or where she failed to show up, was based on illness or had anything to do with FMLA time.

Plaintiff points out that the disciplinary write-ups noted two absences based on sickness on September 28, 2006 and January 3, 2007.[5] However, the reports note N/A, meaning no disciplinary action was taken.

To summarize, between the March, 2007 expired badge incident and her firing in November of 2007, none of her tardiness infractions had anything to do with FMLA; the two sickness absences noted on her reports were expressly not considered; and not withstanding her many violations of policy–violations that could have been used as a pretext to fire her for FMLA use–she was not fired until she had amassed five tardiness infractions and was given multiple warnings. This leads to only one reasonable conclusion: pursuant to the progressive discipline policy, Spirit would have fired Plaintiff for her multiple infractions of late reporting without regard to her use of FMLA leave time, and she was in fact fired for being late multiple times, not for FMLA use. Thus, to the extent that Plaintiff relies on direct evidence of retaliation, Spirit has more than met its burden of production and persuasion, and

---

[5] These were not FMLA leaves. There is no evidence–other than Plaintiff's inadmissible hearsay statements that someone at UNUM named "Erica" told her that the leaves were approved–showing that she requested FMLA leave for those dates. In fact, her own email of December 31, 2007 clearly states that she did *not* request leave on those dates.

is entitled to summary judgment.

Plaintiff's retaliation claim also falters under an indirect evidence analysis. In an indirect or circumstantial case, an FMLA retaliation claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973). *See Donald v. Sybra, Inc.,* 667 F.3d 757, 762 (6th Cir.2012). The Plaintiff must first make a *prima facie* showing of retaliation, by showing that (1) she was engaged in FMLA protected activity; (2) Spirit knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012). Under the *McDonnell Douglas* formulation, the burden then shifts to Spirit to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[6] If Spirit satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for Spirit's actions is not the true reason, but rather a pretext for discrimination.

Plaintiff clearly meets the first three prongs of a *prima facie* case. The fourth prong–a causal connection between her taking FMLA leaves and her termination–is more tenuous. As discussed above, if Spirit had been of a mind to punish Plaintiff for her past FMLA leaves, it had many opportunities to do so before Plaintiff was actually fired in November of 2007, yet it gave her break after break. Nevertheless, Spirit acknowledges that Plaintiff took five intermittent FMLA leaves after her initial tardy write-up in July, 2007. *Spirit's Brief*, at 16. The Sixth Circuit "has embraced the premise that in certain distinct cases where the

---

[6]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir.2004). *See Clark v. Walgreen Co.,* 424 Fed.Appx. 467, 473 (6th Cir.2011) (per curiam)(two-month gap sufficient to support finding of causal connection at the *prima facie* stage); *Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir.2007)(three months sufficient). Because the burden of proof at the *prima facie* stage is minimal, *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007), Plaintiff has met her initial burden.

However, Spirit has met its burden of demonstrating a non-retaliatory reason for firing the Plaintiff. Despite numerous warning and progressive discipline, Plaintiff was habitually late for work, and amassed five tardies within a four-month period. She readily admits that she was late on all occasions. Under Spirit's policy, four would have been enough to justify terminating her employment.

Under the third prong of *McDonnell Douglas*, the burden now shifts back to the Plaintiff to show that the Spirit's stated reasons are pretextual. She may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *Clark v. Walgreen Co.*, 424 Fed.Appx. 467, 473-474, 2011 WL 2023432, *6, *citing Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

Spirit's proffered reason for firing the Plaintiff–that she at least four times violated the company's tardiness policy, thereby subjecting herself to termination–is well grounded in fact, and the Plaintiff herself admits to the facts of the underlying misconduct. Spirit's written policies speak for themselves, and violation of those policies constitutes a sufficient

basis for Plaintiff's discharge.

This leave the second prong–that the proffered reason did not actually motivate the termination. The above analysis of the direct evidence case will suffice to defeat that theory. Again, if Spirit needed a pretext to fire the Plaintiff for her use of FMLA leave, it had multiple opportunities do so throughout 2007, but instead, it continued her employment and gave her numerous opportunities to improve. She did not improve, and continued to show up late for work. That is what led to her termination, not her use of FMLA leave.

A word about Defendant Amy Jacobs. Plaintiff has not rebutted Jacobs' affidavit, *see* Spirit's Exhibit 29, indicating that she had no involvement in approving or rejecting FMLA leave, and did not participate in or make a recommendation as to the decision to terminate the Plaintiff's employment. Apart from the fact that Plaintiff has not shown any FMLA violation, Jacobs herself would have no liability under the FMLA in any event. *See Freemon v. Foley,* 911 F.Supp. 326, 332 (N.D.Ill.1995) (holding that FMLA "extends to all those who controlled 'in whole or in part' [plaintiff's] ability to take a leave of absence or return to her position"); *Oby v. Baton Rouge Marriott,* 329 F.Supp.3d 772, 788 (M.D.La.2004) ("the test for liability is whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position." ).

Spirit and Jacobs are therefore entitled to summary judgment on the FMLA retaliation claim.

### 2. Alleged Violation of the Collective Bargaining Agreement

Plaintiff claims that Spirit violated the CBA (Spirit's Exhibit 1) by "fail[ing] to do an impartial investigation of the alleged charges against Plaintiff." *Amended Complaint*, ¶ 46.[7]

---

[7] As I explained in detail in my Order conditionally granting Plaintiff leave to file an amended complaint [Doc. #41], this is a "hybrid action" under the Railway Labor Act, 45 U.S.C. § 151 *et seq*. "In order to prevail against either the union or the employer in a

That claim is completely without merit. As discussed above, Spirit conducted investigatory meetings regarding Plaintiff's disciplinary letter, as required by the CBA. The charges of tardiness are more than "alleged charges," in that Plaintiff has admitted that she was late on each occasion. Moreover, as discussed above, Spirit complied to the letter with its attendance and progressive discipline policies. There is no remaining factual question as to whether Spirit complied with the CBA.

In addition, as discussed below, there is no evidence that the AFA breached its duty of fair representation. "In any event, when the union cannot be held liable for unfair representation, of course, the employer cannot be held liable for breach of the collective bargaining agreement." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 930 F.2d 505, 510 (6th Cir. 1991). Spirit is entitled to summary judgment on the claim of breach of the CBA.

### B. AFA's Motion [Doc. #82]

"To prevail on a claim for breach of duty of fair representation, [a plaintiff] must show that (1) the action taken by the union was contrary to the CBA; and (2) that the action was dishonest, in bad faith, or discriminatory." *Emswiler v. CSX Transp., Inc*., 691 F.3d 782, 793 (6th Cir. 2012), *citing Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Again, because this is a hybrid action, *see* fn 7, *supra*, the Plaintiff must not only prove that the AFA breached its duty of fair representation, but also

---

hybrid breach of contract/breach of the duty of fair representation case, the plaintiff employee must prove both that the employer breached the terms of the collective bargaining agreement and that the union breached its duty of fair representation." *Hanely v. International Broth. of Locomotive Engineers*, 69 Fed.Appx. 292, 297-298, 2003 WL 21525117, *5 (6th Cir. 2003), *citing Hines v. Anchor Motor Freight,* 424 U.S. 554, 571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Further, "[w]hether the employee sues both the union and the employer or only one of those entities, he must prove the same two facts to receive money damages: that the employer's actions violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation." *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1 339, 108 L.Ed.2d 519 (1990).

that Spirit breached the CBA. " *Chauffeurs, Teamsters & Helpers, supra*.

As discussed above, there is no evidence that could convince a rational trier of fact that Spirit breached the CBA. That fact alone dooms Plaintiff's fair representation claim in this hybrid action. In addition, the AFA did not breach its duty. In terms of Plaintiff's initial disciplinary letters, Plaintiff admitted that she was late on July 9 and July 1, 2007, and the AFA therefore had a rational, good-faith basis to elect not to grieve those disciplinary actions. *See Driver v. United States Postal Service*, 328 F.3d 863, 869 (6th Cir. 2003)("A union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith."). Moreover, courts afford deference to a union's decision not to pursue a grievance. *Id*. at 870.

Plaintiff's objection to Nicole Trupiano inducing her to waive her presence at the investigative meeting concerning her fourth tardy is an example of no good deed going unpunished. This was Plaintiff's fourth infraction; under Spirit's progressive discipline policy, her head was on the chopping block. Trupiano testified that she told Plaintiff that she was facing termination. Robert Love testified that if Plaintiff had not taken the deal for a three-day suspension, she would have been terminated. In other words, Nicole Trupiano saved Plaintiff's job. In no way could any rational trial of fact find this to be a lack of fair representation.[8]

As to the AFA's actions with respect to Plaintiff's termination, the union filed a grievance on her behalf; two AFA representative attended the investigatory meeting with Plaintiff (*Dudzinski Dep.*, AFA's Exhibit A, 318-319); On January 18, 2008, the AFA filed

---

[8] Moreover, "a union does not breach the duty of fair representation by failing to consult with a worker before settling his grievance." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 631 (6th Cir. 2009), *citing Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975).

-15-

a grievance challenging Plaintiff's termination (*Id.* 542-543); four AFA representative attended the grievance hearing (*Id.* 551-552); the AFA took the case to arbitration, at which Plaintiff was represented by an AFA Staff Attorney (*Id.* 551-552, 555). To the extent that at arbitration, the AFA did not give Plaintiff's FLMA allegations the focus that she believed they merited, the panel majority found that the "record does not establish as fact that any of the infractions she was charged with occurred on specific days which were covered under the FMLA, or that they were counted against her when assessing the discipline that was ultimately imposed." AFA's Exhibit 32-B, at 17.

A union breaches a duty of fair representation when its conduct toward an employee is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). A union's action is "arbitrary" "only if [such conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.' " *Id.* at 78, 111 S.Ct. 1127 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). The AFA's representation of Plaintiff following her termination, including the arbitration proceeding, does not meet this test.

The AFA should therefore be granted summary judgment.

Finally, the Plaintiff not having demonstrated any impropriety with either her termination or the AFA's representation, her request for declaratory relief must be denied.

## IV. CONCLUSION

For these reasons, I recommend that both the Motion for Summary Judgment filed by Defendants Spirit Airlines, Inc. and Amy Jacobs [Doc. #74], and the Motion for Summary Judgment filed by Defendant AFA [Doc. #82] be GRANTED, and that these Defendants be

DISMISSED WITH PREJUDICE. I further recommend that Plaintiff's claim for declaratory relief be DISMISSED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 4, 2013

**CERTIFICATE OF SERVICE**

**The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 4, 2013.**

**s/Johnetta M. Curry-Williams**
**Case Manager**